IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DA BIN ZHENG, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No.  08-0547 |
| MICHAEL CHERTOFF, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                        **NOVEMBER 12,  2008**

Pursuant to 8 U.S.C. § 1421(c), Plaintiff, Da Bin Zheng ("Zheng"), petitions this Court for *de novo* review of the decision of the United States Citizenship and Immigration Service ("USCIS") to deny Zheng's N-400 Application for Naturalization.  For the following reasons, this Court orders that Zheng's Application be remanded to the USCIS for reconsideration in light of the findings of this Court.

**I.        FACTS**

Zheng has been a Lawful Permanent Resident of the United States since November 1994 and is eligible to apply for naturalization based on his more than five years of permanent resident status.  A native and citizen of the People's Republic of China, Zheng came to this country sometime in the late 1980s or early 1990.  He came to the attention of U.S. Immigration and Naturalization ("INS") officials in 1991 when he filed written requests for employment authorization.[1]  These applications for employment, signed by Zheng, stated that he last entered

---

[1] Aliens must apply to the immigration agency for permission to legally work in the Untied States by filing an Application for Employment Authorization, Form I-765.

the United States in January 1990 as an "EWI" (shorthand for "Entering Without Inspection").

On March 25, 1992, in connection with his 1991 applications for employment authorization, Zheng was interviewed by INS Special Agent, Thadd Biggs. At that interview, Zheng signed a sworn statement that he last entered the United States at New York, New York, using an altered Japanese passport in which his photograph had been substituted for the true owner's picture. Zheng stated that he was never inspected by a U.S. immigration officer under his true and correct name.

In 1993, Zheng applied to INS to have his status adjusted to that of Lawful Permanent Resident. He did so by filing an Application to Register Permanent Residence or Adjust Status, Form I-485. This application, signed by Zheng, stated that he had entered the United States without being inspected – ie., EWI – on January 10, 1990.

Zheng initially applied for naturalization with INS on November 16, 1999. He was unable to pass the English and civics phase of the testing process, and his application was denied on September 27, 2000 without an inquiry into whether he possessed the requisite good moral character.[2]

Zheng filed another Application for Naturalization, Form N-400, with USCIS on October 3, 2005. Among the questions on this application were the following: "23. Have you EVER given false or misleading information to any U.S. government official while applying for any

---

[2] As stated on Zheng's N-648 Medical Certification for Disability Exceptions,
> [a]pplicants for naturalization are required to learn and/or demonstrate knowledge of the English language, including an ability to read, write and speak words in ordinary usage in the English language, as well as knowledge and understanding of the fundamentals of the history, and of the principles and form of government of the United States. Individuals who are unable, because of a disability and/or impairment(s) to learn and/or demonstrate this required knowledge may apply for a waiver.

immigration benefit or to prevent deportation, exclusion, or removal?  24.  Have you EVER lied to any U.S. government official to gain entry or admission into the United States?"  Zheng answered "no" to both questions.

On March 21, 2006, Zheng appeared for an examination of his naturalization application. A USCIS naturalization officer, after placing Zheng under oath, reviewed with Zheng his answers to the questions on the naturalization application.  Zheng affirmed his prior written negative responses to Questions 23 and 24.  In addition to covering those two questions, the interviewing officer also asked the following question, which he hand-wrote on the application immediately after Questions 23 and 24:  "Have you used any fake documents to ever enter the US?"  The officer wrote that Zheng answered "no" to this question.

In a decision dated September 5, 2006, District Director Donald Monica ("Monica") denied Zheng's application for naturalization.  Monica found that Zheng had given false written responses to Questions 23 and 24 on the application, which he again affirmed under oath during his meeting with the naturalization officer.  In addition, Monica found that Zheng had lied when asked if he had ever used fake documents to enter the United States.  Monica explained his decisions as follows:

> By failing to reveal any of these events involving your entry with a photo substituted passport both on the N-400 you submitted to the United States Citizenship and Immigration Services and at your subsequent interview, and by further submitting an application with false statements, it is the opinion of the Service that you have failed to establish good moral character.  Therefore, it is the decision of the Service that you have failed to prove your eligibility for naturalization.  Consequently, this application for naturalization filed October 2, 2005 is DENIED.

Zheng, as authorized by section 336 of the Immigration and Naturalization Act ("INA"),

3

requested an administrative review of this adverse decision by another USCIS naturalization officer.[3]  As part of that application for administrative review, Zheng's counsel attached an affidavit from Zheng in which he gave an explanation for his responses about never having used fake documents to enter the United States.[4]

On February 8, 2007, Zheng was examined by Peter C. Badgio, Ph.D. ("Dr. Badgio"), in connection with Zheng's request for a waiver because of his inability to meet the knowledge requirements for naturalization.  Dr. Badgio's evaluation reveals "that Mr. Zheng's mental abilities are in the range of Mental Retardation, with an IQ of 65."  (Pl.'s Ex. E at 2.)  Specifically, Dr. Badgio's report states:

> One sign of his impaired mental abilities was that he was highly repetitive throughout the interview, without recognizing that he was repeating statements that he had made before.  This sort of repetitiveness (perseveration) is often seen among individuals with severe mental limitations.  Another sign of Mr. Zheng's impairment was his inability to recall pertinent life information with any precision.  For example, when asked how long he has been married, he responded "over 10 years," but could not specify further.  Similarly, he could not precisely recall the year or his age when he came to the United States.

(Pl.'s Ex. E at 7.)

On February 28, 2007, a different USCIS officer conducted a hearing to review the agency's decision denying Zheng's application for naturalization.  In a decision dated October 2,

---

[3] INA section 336 [8 U.S.C. § 1447] provides for an administrative review before a different immigration officer if the agency denies the application for naturalization.  The applicant must file a Request for a Hearing on a Decision in Naturalization Proceedings, Form N-336.  The applicant is required, on this form, to explain how the agency erred in its decision denying the application.

[4] Zheng's signed affidavit states:
> I came to the United States with the help of a smuggler.  The smuggler gave me some documents and helped me.  I don't remember what he gave me or everything he told me to say, and I didn't understand immigration law.  I thought that since I was given a green card, what I said to the immigration officer was forgiven.  I am sorry this caused problems . . . .

2007, Acting District Director Evangelia Klapakis ("Klapakis") affirmed the prior decision denying his application. Klapakis explained her decision to affirm the denial as follows:

> You appeared for your review hearing on February 28, 2007. Your file confirms the two contradictory basis [sic] for which you claim to be the place and manner of entry into the United States. Your testimony from the hearing has been considered. However, the explanations do not eliminate the record of events and fails to prove you did not provide false testimony during your naturalization interview. The denial of your application is affirmed.

## II.  STANDARD OF REVIEW

This Court has jurisdiction to conduct a *de novo* review of the denial of the petitioner's application for naturalization pursuant to 8 U.S.C. § 1421(c). Under this statute:

> [a] person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a)[5] of this Title, may seek review of such denial before the United States District Court for the district in which the person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the Petitioner, conduct a hearing de novo on the application.

U.S.C. § 1421(c).

## III.  DISCUSSION

The denial of Zheng's Application for Naturalization rests on section 316 of the INA, which states, in relevant part:

> An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. . . . [T]he Service shall evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of

---

[5] Section 1447(a) of Title Eight of the United States Code provides that "[i]f, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer."

> residence. . . . An applicant shall be found to lack good moral character if during the statutory period the applicant . . . [h]as given false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sought the benefit . . . .

8 C.F.R. § 316.10.

The USCIS contends that Zheng lacks the good moral character required for naturalization because Zheng made misrepresentations about the fact that his previous applications contained contradictory information with regard to his date and manner of entry, and these misrepresentations constitute testimony made "with an intent to obtain an immigration benefit" under section 316. We disagree.

While good moral character is not a defined term, it has been interpreted as meaning that character or conduct which measures up to the standards of an average citizen in the community in which the applicant resides. See In re Mogus, 73 F. Supp. 150, 153 (W.D. Pa. 1947). "We do not require perfection in our new citizens." In re Petition of Sousounis, 239 F. Supp. 126, 128 (E.D. Pa. 1965) (quoting Klig v. United States, 296 F.2d 343, 346 (2nd Cir. 1961)).

The fact that Zheng made misrepresentations to the USCIS regarding his manner of entry into the United States does not automatically disqualify him from naturalizing. On the contrary, courts have often found that an alien may still possess good moral character despite misrepresentations the alien has made. See, eg., In re Leibowitz, 49 F. Supp. 953, 954 (D. Ill. 1943) (finding that applicant's use of his older brother's name in obtaining a visa to enter the United States was insufficient evidence of lack of good moral character); Petition of Zele, 140

6

F.2d 773, 776 (2d Cir. N.Y. 1944) (considering none of petitioner's false statements in an affidavit signed before naturalization officials to be "important or extensive" and finding "no reason to hold that . . . inconsequential misstatements should brand petitioner a man of such bad moral character as to necessitate his exclusion from the privilege and honor of citizenship); In re Taran, 314 F. Supp. 767, 768 (S.D. Fla. 1970) ("[T]he statements at issue [made under oath which proved to be false] . . . are insufficient to taint the petition of Mr. Taran."); In re Camaras, 202 F. 1019, 1020 (D.R.I. 1913) (finding that applicant's omission of the name "Celia" and the inclusion of the name "Ida" in listing the names of his children, and his statement that all his children were residing at Providence, Rhode Island, where in fact one child had not yet been admitted to the United States but was being held by immigration authorities, was insufficient evidence of lack of good moral character as to justify denial of the petition); Polkovitz Petition, No. 8026, 1949 Pa. D. & C. LEXIS 385, at *5 (Pa. C.P. 1949) (granting a petition for naturalization where an alien made contradictory statements under oath concerning an illicit relationship formerly existing between himself and a woman by whom he had two children); In re Argento, 159 F. 498, 499 (D.N.Y. 1908) (finding that an alien who procured a naturalization certificate upon a false statement regarding his age and later verified a petition to the court which failed to set forth the fact that he had previously been in possession of a certificate was not precluded from making a new application to establish good moral character).

Zheng's diminished mental capacity also calls into question the assertion that Zheng made misrepresentations with the intent of receiving immigration benefits. See Benton v. Bowen, No. 85-6286, 1986 U.S. Dist. LEXIS 25139, at *13 (E.D. Pa. May 23, 1986) (finding that a woman with an IQ of 46 was incapable of forming intent for purposes of establishing

domicile); see also Wiley v. State Farm Fire & Cas. Co., 995 F.2d 457, 465 (3d Cir. 1993) ("The incapacity to form intent is often more specifically labelled a lack of or deficiency in mental capacity to form intent, whether due to mental disease or defect or voluntary intoxication by alcohol and/or drugs").  Furthermore, in deciding whether a misrepresentation warrants a finding of lack of good moral character, courts not only take into account whether the misrepresentation was made with the intent to deceive, but also the sophistication of the petitioner, the petitioner's work history, and the petitioner's criminal record.  See, eg., In re Argento, 159 F. at 499 (finding petitioner was ignorant of the English language); Polkovitz Petition, 1949 Pa. D. & C. LEXIS 385 at *5 ("Applicant has worked for one employer for 45 years.  We must balance the misdeeds with the good deeds.  The court in its discretion should be sufficiently liberal to feel that applicant has now changed his course of life and has become a reputable citizen."); In re Taran, 314 F. Supp. at 768 ("The Court is aware that the lifetime record of petitioner is far from meritorious.  The evidence, however, reveals that he has not been arrested or charged with any crime since 1956.").

    It is unclear what benefit Zheng stood to gain by denying that he previously made contradictory statements, especially given that an average person in Zheng's position would have realized that the USCIS was already aware of the contradictions in his record when it questioned him.  It is further unclear whether Zheng ever fully understood the nature of the questioning or even the underlying misrepresentations made on his behalf on the previous written applications.  In addition, the record reveals that Zheng has had no arrests, is married with two children, and has maintained a steady work history since his arrival to the United States.  To preclude Zheng from naturalizing on the tenuous argument that he lied about not lying in the past, when the

record reflects not only his honest and hardworking history, but also his limited intelligence and inability to communicate in English, would be manifest injustice. Therefore, this Court finds that Zheng does not lack good moral character for purposes of his N-400 Application for Naturalization, and the USCIS must reconsider Zheng's Application in light of this finding.

  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DA BIN ZHENG, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No.  08-0547 |
| MICHAEL CHERTOFF, et al., | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this  12th   day of November, 2008, upon consideration of Petitioner's Petition for Review (Doc. No. 1), and the responses thereto, it is hereby **ORDERED** that this Petition is **GRANTED**.  Zheng's N-400 Application for Naturalization shall be remanded to the USCIS for reconsideration in light of the findings of this Court.

BY  THE  COURT:


/**s**/ Robert F. Kelly
ROBERT  F. KELLY
SENIOR  JUDGE